IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-04245-PAB

FRANTZ NELSON,

Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
GEORGE VALDEZ,[1] Field Office Director, Denver Field Officer, U.S. Immigration and Customs Enforcement, in his official capacity,
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, in his official capacity,
DAVID VENTURELLA, Acting Director of Immigration and Customs Enforcement, in his official capacity, and
TODD BLANCHE, Attorney General, U.S. Department of Justice, in his official capacity,

Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Frantz Nelson's Petition for Writ of Habeas Corpus [Docket No. 1]. Respondents filed a response. Docket No. 8.

## I. BACKGROUND[2]

Petitioner is a native of Haiti. Docket No. 1 at 5, ¶ 17. Petitioner entered the United States in June 1992 as a parolee and later applied for asylum. *Id.* Following misdemeanor arrests in the Miami area, petitioner was contacted by U.S. Customs and Border Protection on January 28, 2008 and placed into removal proceedings. *Id.*

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), George Valdez is automatically substituted as a party to this action.

[2] The following facts are undisputed unless otherwise noted.

Following the removal proceedings, an immigration judge ordered petitioner's removal to Haiti, but granted petitioner withholding of removal. *Id.* Petitioner was released from custody and spent the past 15 years in the United States, where he has lawfully worked, married a United States citizen, and had two United States citizen children. *Id.* at 6, ¶ 19. Petitioner has no criminal history following the grant of withholding of removal. *Id.* On August 22, 2026, petitioner was flying from Aspen, Colorado to New York on business. *Id.*, ¶ 20. While waiting for his connecting flight at Denver International Airport, petitioner was approached by a plainclothes Immigration and Customs Enforcement ("ICE") agent. *Id.* The ICE agent informed petitioner that he was being taken into custody. *Id.* Petitioner was taken to the Aurora contract detention facility, where he remains detained. *Id.* Petitioner was not provided with any documents or notices upon his arrest. *Id.* About a week after his arrest, the ICE agent who arrested petitioner informed him that he was not being deported to Haiti, but was being deported to a third country. *Id.* The ICE agent did not identify the third county and petitioner has been given no further information. *Id.*

On September 10, 2026, petitioner filed a petition for writ of habeas corpus. *See generally id.* The petition brings two claims: one claim that ICE violated petitioner's due process rights by revoking petitioner's release without following federal regulations and one claim that ICE violated petitioner's due process rights by attempting to remove him to a third country without adequate procedural safeguards. *Id.* at 6-11, ¶¶ 21-35. Petitioner seeks his immediate release and seeks that the Court enjoin respondents from removing petitioner to a third country without first providing him with adequate notice and a meaningful opportunity to be heard. *Id.* at 12. On September 21, 2026,

respondents filed a response indicating that they "are not submitting a brief in opposition to the Petition." Docket No. 8.

## II. ANALYSIS

The Court considers petitioner's due process claim based on ICE's failure to follow federal regulations when revoking petitioner's release. Pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the court considers the following in weighing a due process claim:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Given that a "person's physical freedom is the most elemental of liberty interests," *see Granillo Chavarria v. Baltazar*, 824 F. Supp. 3d 1170, 1174 (D. Colo. 2026) (internal quotation and citation omitted), the first factor weighs in favor of petitioner.

Relevant to the second factor is the fact that petitioner was previously released on parole. In releasing petitioner on parole, the respondents necessarily determined that petitioner was not a danger to the community or a flight risk. *See Ekenge v. Baltazar*, 26-cv-00630-SBP, 2026 WL 617341, at *5 (D. Colo. Mar. 5, 2026). Respondents do not provide any indication as to why petitioner's parole was revoked. Here – where respondents have provided no change in circumstances that alters the initial determination that petitioner is not a danger to the community or a flight risk – there is a significant risk of the erroneous deprivation of petitioner's liberty interest. *See Ekenge*, 2026 WL 617341, at *5 (finding that the "risk of erroneous deprivation is also considerable" where "[i]t appears to be undisputed that Petitioner was previously

released after it was determined he was not a danger to the community or a flight risk"); *Perez-Cifuentes v. Warden, Denver Contract Detention Center Denver Field Office Director*, No. 26-cv-02371-NRN, 2026 WL 1733489, at *3 (D. Colo. June 16, 2026) (finding that "the risk of erroneous deprivation is considerable" where petitioner was previously released on his own recognizance and respondents "do not contest, that at the time of his detention, there had not been a material change in circumstances") (alteration, internal quotation, and citation omitted); *Uzcategui v. Brooksby,* 2026 WL 622751, at *11 (D. Utah Mar. 5, 2026) (finding that the second *Mathews* factor weighs in favor of petitioner because "civil immigration detention, which is 'nonpunitive in purpose and effect' is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community," "Federal Respondents do not contend that [petitioner] is or was a flight risk or a danger to the community," and petitioner was previously released on parole) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). "A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest." *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025). Thus, the Court finds that the second *Mathews* factor weighs in favor of petitioner.

Regarding the third factor, "the government clearly has an interest in enforcing immigration laws, but [the government's] interest in detaining petitioner without a warrant, notice to appear, or any justifiable reasonable explanation for [his] detention is low." *See Uzcategui*, 2026 WL 622751, at *11 (internal quotation and citation omitted); *cf. L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024) ("It would stand to reason if a noncitizen was neither a flight risk nor dangerous, there would be no

government or public interest in detention."). Furthermore, the Court finds that the fiscal and administrative burdens associated with evaluating whether a change in circumstance justifies petitioner's re-detention is low when compared to petitioner's interest in being free from the erroneous deprivation of his liberty. *See Ekenge,* 2026 WL 617341, at *5 ("The Government's interest in re-detaining non-citizens previously released without a hearing is low and any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.") (alterations and citation omitted). Accordingly, the third *Mathews* factor weighs in favor of petitioner.

Pursuant to *Mathews*, the Court finds that petitioner's due process rights were violated. Respondents provide no argument to the contrary. They also do not contend that petitioner is a flight risk or danger to the community or provide a reason for the termination of petitioner's parole. Thus, the Court will grant the habeas petition and order petitioner's immediate release with the same conditions of release that were imposed during petitioner's initial release. *See Perez-Cifuentes*, 2026 WL 1733489, at *3, *5 ("As to the appropriate remedy, the Court finds that Petitioner is entitled to immediate release. Petitioner was released from the custody of the [Office of Refugee Resettlement] in 2021 and he has since remained at liberty relying on that determination" and ordering that respondents may "not impose any additional restrictions" on petitioner) (internal quotations and citation omitted); *Murzi v. Noem*, No. 26-cv-00359-CNS, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) ("Immediate release is the appropriate remedy. To be released on conditional parole/own recognizance, there must be a finding that the immigrant does not pose a risk of flight or danger to the community and Respondents do not otherwise argue that Petitioner poses such risk or

danger" and ordering that respondents "may not impose any conditions of release or supervision that were not imposed in the original grant of parole") (internal quotation and citation omitted); *Ekenge*, 2026 WL 617341, at *7 ("other courts have found that . . . releasing a petitioner immediately remains the appropriate approach, at least where no evidence has been provided that the petitioner violated the conditions of his release pursuant to an OREC or similar status, [or] where little or no evidence has been provided in support of respondents' claims as to what the petitioner's conditions of release are"); *Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 396 (S.D.N.Y. 2026) ("in light of the Government's failure to provide Petitioner any individualized process either prior to or contemporaneous with the deprivation of his liberty, which was formerly granted by the Government, and the Government's inability to point to any evidence of risk of flight or danger," finding that petitioner's immediate release is the appropriate remedy).

The Court will next analyze petitioner's due process claim premised on his concern that he will not be afforded procedural safeguards prior to his removal. Petitioner states that current DHS guidance states that noncitizens may be removed to a third country without notice or other further procedures if the country has given diplomatic assurances that individuals removed from the United States will not be persecuted or tortured, and the Department of State deems those assurances credible. Docket No. 1 at 10, ¶ 30. Respondents do not dispute that this is current DHS policy that is applicable to petitioner's removal.

The Supreme Court has held that immigration detainees "are entitled to notice and an opportunity to challenge their removal." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025). Such an opportunity is particularly important here, where petitioner was granted

withholding of removal to Haiti due to an immigration judge finding that there were concerns for petitioner's safety if he were to be removed to Haiti. Providing petitioner with notice and an opportunity to challenge removal to a third country may allow petitioner to avoid removal to a third country where he might face a credible risk of persecution. Current DHS policy, however, provides for the possibility that petitioner will be removed without notice. Even if ICE must receive "credible assurances" that petitioner will not be tortured, this deprives petitioner of the opportunity to argue that such assurances are, in fact, not credible. Furthermore, it is contrary to the rule that noncitizens are "entitled to notice and an opportunity to challenge their removal." *Trump*, 604 U.S. at 673. Thus, many courts have found that ICE's third-country removal policies "violate the constitutional right to due process." *Esmaeili v. Noem*, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026). Accordingly, the Court will require respondents to provide petitioner with notice and an opportunity to challenge his removal before removing him to a third country. The Court finds that the relief granted in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 393-94 (D. Mass. 2025), properly balances petitioner's due process rights and respondents' interest in being able to efficiently effectuate removal. Per the defendants' request, the *D.V.D.* court clarified its remedy in a subsequent order, holding that,

> All removals to third countries, *i.e.*, removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, *see* 8 U.S.C. § 1231(b)(1)(C), must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand. Dkt. 64 at 46–47. Following notice, the individual must be given a meaningful opportunity, **and a minimum of ten days**, to raise a fear-based claim for CAT protection prior to removal. *See id.* If the non-citizen demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen the non-citizen's immigration

> proceedings. *Id.* If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings. *Id.*

*D.V.D. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025). The Court finds that this procedure sufficiently provides petitioner with notice and an opportunity to challenge his removal without being unduly burdensome on respondents and will order respondents to follow this procedure.

## III. CONCLUSION

Therefore, it is

**ORDERED** that the petitioner Frantz Nelson's Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**. It is further

**ORDERED** that respondents shall release petitioner from custody within **48 hours** of the issuance of this order pursuant to the conditions of petitioner's initial release. It is further

**ORDERED** that the parties shall file a status report within **4 days** of petitioner's release. It is further

**ORDERED** that respondents may not remove petitioner to a third country without following the procedures identified herein.

DATED September 22, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge